GARRISON, Judge.
This is an appeal from a judgment of the Twenty-Fifth Judicial Court, Parish of Plaquemines recognizing plaintiffs Paul Haworth and David Dawson as owners of the following property and dismissing defendants’ Donald W. Eppley and Lester A. L’Hoste, Jr. reconventional demand on the basis of 30 years acquisitive prescription:
“A certain strip or portion of ground, being a portion of Lot 7 of Greenwood Plantation, which strip ajoins [sic] Lot or Tract 8 on its upriver side, measuring approximately 35' in width and which strip fronts on La. Highway 39 and which strip is bounded by portions of an old fence or fences which are shown on a survey by Stirling [sic] Mandle, Survey- or, dated August 14, 1965, which survey is annexed to an act of sale passes before John M. Holahan, N.P. dated September 1, 1965.”
From that judgment, defendants appeal.
On appeal, defendants raise three specifications of error:
1. The trial court erred in finding Rene Becnel’s possession was precarious;
2. The trial court erred in accepting hearsay testimony as opposed to documentary evidence, as to intent to possess as owners;
*858 3. The trial court erred in granting judgment in favor of the plaintiffs.
A brief explanation of the basis of each claim, beginning with the Eppley-L’Hoste claim, is provided.
On September 1, 1965 in an act before John M. Holahan, N.P. Rene Joseph Becnel sold Lots 8 and 9 of the Greenwood Plantation tract to Mrs. Ophelia Cochran for $45,-000.00 cash. The act of sale contained the following added language:
“It is the intent of the vendor to sell all right, title, and interest in and to all ground which is herein conveyed or which immediately adjoins the property hereinabove described which the vendor has been occupying in open, physical, notorious possession.”
In addition, the following affidavit of the vendors was attached both in the middle of and behind the act of sale pages:
“MR. AND MRS. RENE JOSEPH BECNEL who, after first being duly sworn, did depose and say:
that affiants have been in open, notorious, and adverse possession of the strip of ground adjoining and above lot 8, Greenwood Plantation in Plaquemines Parish, Louisiana, all as more fully shown on a survey by Sterling Mandle, dated August 14, 1956, and the fence as indicated on such survey was erected by affiants in the year 1936 and affiants have remained in continuous possession of such property from that time until this date; that such land was used for agricultural purposes.”
The strip of ground “adjoining and above lot 8” is a strip 35 feet long bordering on the highway and running back, between the property line of Lot 8 and a fence erected 35 feet within Lot 7. This strip has come to be called Lot 7-A. On Lot 7-A Becnel had planted orange trees, built a fence, erected a sawmill, built cattle holding and shipping, pens and built a road.
Lots 8, 9, and 7-A were cleared, contained buildings and roads and were under cultivation. The rest of Lot 7 through Lot 1 was uncleared wild woods. Thus a mere visual inspection without benefit of surveys or title information would lead one to believe that the boundary of Lot 8 was the fence which enclosed the additional 35 feet of Lot 7-A. In fact, Macey Leggio, the younger sister of Ophelia Cochran, testified that when she accompanied her sister to inspect the property prior to purchase, Rene Becnel told them that the property line was the fence. (Tr. p. 33). Macey Leggio further testified that her sister occupied the Lot 7-A strip and, among other things, grew satsumas for commercial production on the strip. Ophelia died in 1973 and her nephew continued to farm the area until his death on January 2, 1980. In 1980, Leggio as executrix maintained the area including the citrus grove area until the Succession of Ophelia Cochran sold the property to Donald Eppley and Lester L’Hoste on July 9, 1981 by act before Eric Lundin III, N.P. for $225,000.00. The act of sale contained the following language:
“THE FOLLOWING DESCRIBED PROPERTY IS TRANSFERRED TO THE PURCHASERS WITHOUT WARRANTY NOT EVEN FOR A RETURN OF THE PURCHASE PRICE OR A PRO-RATA REDUCTION THEREOF BUT WITH FULL SUBSTITUTION AND SUBROGATION IN AND TO ALL OF THE RIGHTS AND ACTIONS OF WARRANTY AND POSSESSION WHICH VENDORS MAY HAVE AGAINST ALL PROCEEDING OWNERS AND VENDORS.
“THAT CERTAIN STRIP OR PORTION OF GROUND, adjoining Tract # 8 on the upriver side within the fence shown on Survey by Sterling Mandle, Surveyor, dated August 14,1965 measuring approximately thirty-five feet (35') in width.
“Being all of that property immediately adjoining Lot 8 on its upriver side and being bounded on the West by Louisiana State Highway # 39, on the North by old fence line in disrepair, on the East by the end of the old fence line and on the South by Lot # 8, all as shown on Survey by Eugene I. Estopinal, Surveyor, dated June 24, 1981, annexed hereto and made a part thereof.
*859 “Being a portion of the same property acquired by Ophelia Cochran, wife of Lloyd H. Schultz from Rene Joseph Bec-nel by act before John M. Holahan, Notary Public, dated September 1, 1965, recorded COB 291 Folio 940.”
Eppley and L’Hoste’s claim on 30 years acquisitive prescription is based upon the representations made in the public records of the Parish of Plaquemines and the open, notorious and adverse possession of the 35 feet fenced strip since 1936 through the ancestors in title: Rene Becnel, Triangle Development Corp., Rene Becnel again, Ophelia Cochran, and her succession, and the purchasers themselves, specifically from 1936 through 1984, when suit was filed against them.
Turning to the Haworth-Dawson claim, on August 29, 1984 in an act before Ira Middleberg, N.P., Judith Ann Gordon, Myrtle Mary Sporl, Alexander C. Granzin, Jr. through his attorney Jonas C. Sporl and Noel Granzin through her attorney Jonas C. Sporl sold Lots 1-7 totaling 173.34 acres plus 205.12 acres of Section 38 and 96.12 acres of Section 21 for a total of 474.70 acres to Paul Haworth and David Dawson for $580,000.00. Contained on the survey referenced by that act of sale is the notation: “2±_ acres adversely possessed by owner of lot 8.” In addition the act of sale stated:
“THIS ACT IS MADE AND ACCEPTED SUBJECT TO THE FOLLOWING:
******
“8. The following matters, as shown on the plot of survey by Stephen Estopinal dated August 9, 1984:
“b. Any loss or damage arising from variances between the location of the property lines of the subject premises and the location of fences and/or bounding ditches and dikes along said property lines, including 35 feet _+ wide fence encroachment upon the subject premises by fence appurtenant to property adjoining the southerly boundary of the subject premises.”
It is apparent that prior to purchase Ha-worth and Dawson were placed on notice of the adverse possession by pre-existing documents on file in the public records as well as recitations in their own act of sale and survey.
Turning to defendant’s first two specifications of error, defendant’s argument the trial court erred in finding Rene Becnel’s possession was precarious in direct opposition to the notarized affidavit filed in the public records of Plaquemines Parish is correct.
Jonas C. Sporl, attorney for the Gordons, interviewed Rene Becnel[1] on May 27, 1983 on the subject of Lot 7-A. Jonas Sporl audio taped the interview and it was admitted by the trial court judge over objection. At the time, Becnel was 82 years old and recovering from cataract surgery. Mr. Becnel could not remember his address and it took him three tries to name the parish in which he was presently located. The tape is replete with the sound of the tape being turned off and on between a question and an answer. Near the end, Sporl asked Becnel leading questions to which Becnel uniformly replied, “Yes, yes that’s right,” even to conflicting questions. Mr. Becnel said that he continuously leased all of the Gordon tract (Lots 1-7) for $100.00 per year through the “present,” although at the then “present,” Becnel had sold the property 18 years earlier. Mr. Becnel was recovering from surgery and under a doctors care. The questions asked were leading and Mr. Becnel was not subject to cross examination. No court reporter or opposing counsel were present. It was improper for the trial court to admit this tape.
On the tape Mr. Becnel states that although his recorded affidavit contained in the Holahan act of sale recites that he had been in open, notorious, and adverse possession of 7-A, he did not know *860 what he was signing at the time and he signed whatever the lawyer told him to sign without question. Even if this recantation is true — the real issue presented is can recorded documents, some in authentic form, pertaining to title and placed within the protection of the public records doctrine be overriden by the defense “I didn’t know what I was signing?” made on an inadmissible audio tape? We think not. The public has a right to rely upon the public records. In addition, at the time of purchase, Haworth and Dawson knew or should have known of the adverse possession from their own survey. It is apparent that the trier of fact was manifestly erroneous. Accordingly the judgment of the district court is reversed and rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the defendants, Lester A. L’Hoste, Jr. and Donald W. Eppley, and against the plaintiffs, Paul Haworth and David Dawson, recognizing defendants Lester A. L’Hoste, Jr. and Donald W. Epp-ley as the legal owners of the immovable property described as follows:
A certain strip or portion of ground, being a portion of Lot 7 of Greenwood Plantation, which strip adjoins Lot or Tract 8 on its upriver side, measuring approximately 35' in width and which strip fronts on La. Highway 39 and which strip is bounded by portions of an old fence or fences which are shown on a survey by Sterling Mandle, Surveyor, dated August 14, 1965, which survey is annexed to an act of sale passed before John M. Holahan, N.P., dated September 1, 1965.
REVERSED AND RENDERED.
CIACCIO, J., concurs.
SCHOTT, J., dissents.

. Rene Becnel died in 1984. No deposition to perpetuate testimony was taken prior to his death. Opposing counsel was not present at Sport's taped interview and did not have an opportunity to cross-examine. Indeed no judicial officers other than Mr. Sporl were present and there was no court reporter.